USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/21/05

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

ELI LILLY DO BRASIL, LTDA.,

            Plaintiff,

-against-

FEDERAL EXPRESS CORPORATION,

           Defendant.

-------------------------------------------------------------x

04 Civ. 5285

**OPINION AND ORDER**

Martin F. Casey, Casey & Barnett, LLC,
New York, New York for Plaintiff.

Olivia M. Gross, Esq., Newman Fitch Altheim
Myers, P.C., New York, New York, Robert R.
Ross, Federal Express Corporation, Memphis,
Tennessee for Defendant.

GERARD E. LYNCH, District Judge:

      Plaintiff Eli Lilly Do Brasil, Ltda. ("Eli Lilly") sues defendant Federal Express Corporation ("FedEx") for losses incurred when a shipment of pharmaceuticals belonging to plaintiff and en route from its factory in Sao Paolo, Brazil, to a customer in Iwate, Japan, was hijacked and stolen during land transportation in Brazil while under the care of defendant's subcontractor. Plaintiff initially moved for partial summary judgment dismissing defendant's second affirmative defense limiting defendant's liability in accordance with provisions of the Warsaw Convention. Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, T.S. No. 876 (1934). Defendant now concedes that the Warsaw Convention is inapplicable, but cross-moves for partial summary judgment limiting its liability in accordance with federal common law. Plaintiff opposes the

application of federal common law and cross-moves for a determination that Brazilian law governs defendant's liability, presenting the Court with a sharply defined dispute over the appropriate choice of law. Plaintiff's original motion for partial summary judgment dismissing defendant's second affirmative defense will be granted on consent. Partial summary judgment on the choice-of-law issue will be granted in favor of defendant and the application of federal common law, and against plaintiff and the application of Brazilian law.

## BACKGROUND

The following facts are undisputed for purposes of deciding these competing motions. Plaintiff Eli Lilly, a manufacturer of pharmaceuticals, contracted with Nippon Express do Brasil Ltda., which in turn contracted with defendant FedEx, a federally certified all-cargo air carrier, for the transportation of a shipment of pharmaceuticals from Brazil to Japan. The shipment was delivered to FedEx in Guarulhos, Brazil on October 24, 2002 (P. Local R. 56.1 Stmt. ¶ 1), and upon receipt of the shipment, FedEx issued air waybill number 023-0215-4504 ("airbill"), covering the transportation of the goods from Brazil to Japan and embodying the contract of carriage. (Id. ¶ 2; D. Cross-Mot. Local R. 56.1 Stmt. ¶ 3.) FedEx then arranged for its subcontractor Jumbo Jet Transportes Internacionais Ltda. ("Jumbo Jet") to transport the shipment by road from Guarulhos to Viracopos, Brazil. The shipment departed Guarulhos on October 25, 2002, but was hijacked and stolen while en route to Viracopos. (P. Local R. 56.1. Stmt. ¶¶ 5, 6.) Eli Lilly now sues for the loss of the shipment, which it estimates to have a value of at least $800,000. (Compl. ¶ 21.)

## DISCUSSION

I. <u>Summary Judgment Standards</u>

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Ordinarily, a "genuine issue as to any material fact" is established "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). "It is the movant's burden to show that no genuine factual dispute exists, and all reasonable inferences must be drawn in the non-movant's favor." <u>Giannullo v. City of New York</u>, 322 F.3d 139, 140 (2d Cir. 2003) (internal citations omitted); <u>see</u> <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962). Here, however, there are no material disputed facts put forward by the parties, and accordingly the focus shifts entirely to whether judgment is warranted for either party as a matter of law.[1]

---

[1] In support of its cross-motion, Eli Lilly submitted a statement of material facts pursuant to Local Rule 56.1, but failed to support these facts with citations to admissible evidence in the record, as that rule further requires. <u>See</u> Local Rule 56.1(d). FedEx argues that this defect warrants an adjudication in its favor, either because Eli Lilly's cross-motion should be dismissed as unsupported by facts showing its entitlement to summary judgment, or because as the party opposing FedEx's motion for partial summary judgment, Eli Lilly has failed to come forward with facts showing a genuine issue for trial. (D. Cross-Mot. Reply Mem. 3.) Eli Lilly asks the Court to disregard its failure to support its statements with admissible evidence, or, in the alternative, to permit a continuance of the motion so that it may take discovery to support its statements. (P. Cross-Mot. Reply Mem. 2–3.) Both parties have submitted sur-replies on this issue in the form of letters to the Court. (Letter of Robert R. Ross, Federal Express Corporation, to the Court, dated July 14, 2005; Letter of Martin F. Casey, Casey & Barnett, LLC, to the Court, dated July 15, 2005.)
    First, it is within the Court's discretion to excuse a party from compliance with a local rule. <u>See</u> <u>Wight v. Bankamerica Corp.</u>, 219 F.3d 79, 85 (2d Cir. 2000). Thus, Eli Lilly's failure

II. Warsaw Convention

Eli Lilly initially moved for partial summary judgment dismissing FedEx's second affirmative defense limiting its liability under the Warsaw Convention. As stated above, FedEx now concedes that the Warsaw Convention is inapplicable where, as here, the loss occurred outside the premises of an airport. (D. Cross-Mot. Mem. 3.) See Victoria Sales Corp. v. Emery Air Freight, Inc., 917 F.2d 705, 707 (2d Cir. 1990) (plain meaning of Warsaw Convention "draws the line at the airport's border" and limits its applicability to damage occurring "while the cargo was in the air *or* on the ground but within the confines of the airport's boundaries"). Accordingly, Eli Lilly's partial summary judgment dismissing FedEx's second affirmative defense is granted on consent.

---

to support its assertions with citations to the evidence in the record is not fatal to its motion, provided the record either contains evidence which supports those assertions, or, even if those assertions are disregarded entirely, otherwise shows its entitlement to summary judgment as a matter of law. FedEx is thus incorrect that the formal defects of Eli Lilly's statement alone require granting its cross-motion for summary judgment, and denying that of Eli Lilly.

Second, as to whether the Court ought to consider the unsupported assertions put forward by Eli Lilly, certain statements have been conceded by FedEx (D. Response to P. Cross-Mot. R. 56.1 Stmt. ¶¶ 1, 5, 6, 7, 8, 9) and the remainder – including the statements that "Plaintiff, Eli Lilly do Brasil, Ltda. is a corporation organized pursuant to the laws of Brazil and transacts business in Brazil;" "Nippon Express do Brasil Ltda. is, upon information and belief, a corporation organized pursuant to the laws of Brazil. Nippon Express do Brazil, Ltda. transacts business in Brazil;" "Jumbo Jet Transportes Internacionais is a company that operates in Brazil and performs road transportation in Brazil" – appear to be disputed not because FedEx affirmatively contests their accuracy, but simply because they are unsupported. (D. Response to P. Cross-Mot. Local R. 56.1 Stmt. ¶¶ 2, 3, 4.) Nor is it clear why Eli Lilly would require discovery to substantiate such straightforward assertions as that it is "a corporation organized pursuant to the laws of Brazil." Nothing is to be gained by excluding assertions the accuracy of which is undisputed. Moreover, although the record does not contain evidence of the places of incorporation for Eli Lilly, Nippon Express, and Jumbo Jet, the record clearly establishes that all three transact business in Brazil. The Court will consider Eli Lilly's statement of material facts to the extent that its assertions are either undisputed or established by evidence in the record.

III. Choice of Law

In its cross-motion for partial summary judgment, however, FedEx argues that even apart from the Warsaw Convention, its liability is governed by federal common law and remains limited by the terms of the airbill. (D. Cross-Mot. Mem. 3.) The airbill sets forth the following condition of contract in paragraph (4):

> Except as otherwise provided in carrier's tariffs or conditions of carriage, in carriage to which the Warsaw Convention does not apply carrier's liability shall not exceed US $20.00 or the equivalent per kilogram of goods lost, damaged or delayed, unless a higher value is declared by the shipper and a supplementary charge paid.

(Casey Aff. Ex. 2, at 2.) No value was declared for the goods, which weighed 1443.15 kilograms. (Id. at 1; D. Cross-Mot. Local R. 56.1 Stmt. ¶¶ 4, 5.) Thus, if the limitation provision of the airbill is enforceable – and Eli Lilly concedes that it would be if federal common law controls (P. Cross-Mot. Mem. 1), see generally Nippon Fire & Marine Ins. Co., Ltd. v. Skyway Freight Systems, Inc., 235 F.3d 53, 59–60 (2d Cir. 2000) ("released value" doctrine permits carriers to limit their liability for loss or damaged cargo, provided loss limitation provisions are "set forth in a 'reasonably communicative' form, so as to result in a 'fair, open, just and reasonable agreement' between carrier and shipper" and "offer the shipper a possibility of higher recovery by paying the carrier a higher rate") – FedEx's liability, if any, is limited to US $28,863.[2]

---

[2] FedEx also moves for partial summary judgment dismissing Eli Lilly's state law claims. Eli Lilly has not responded to this aspect of FedEx's motion, and it is not clear from the Complaint that Eli Lilly ever intended to press any state law claims. Although the Complaint invokes the Court's diversity jurisdiction, it claims to state a cause of action for theft "subject to the provisions of the [Warsaw Convention]." (Compl. ¶¶ 6, 7.) In any event, claims against federally-regulated air carriers for lost or damaged shipments are governed by federal common

Eli Lilly responds with its own cross-motion, asking the Court to declare Brazilian law, not federal common law, controlling, and presenting evidence that under Brazilian law, any limitation of liability contained in the contract of carriage would be vitiated by a finding that the carrier acted with gross negligence. (P. Cross-Mot. Mem. 1; Machado Cert. ¶¶ 2, 3.) FedEx, while reserving the issue of just what Brazilian law would require (D. Cross-Mot. Reply Mem. 2 n.1), argues that a choice-of-law analysis would support the application of federal common law, not Brazilian law. (Id. at 6–9.) Thus, and in spite of the somewhat contorted procedural posture, the only real issue presented for adjudication by these competing motions is whether Brazilian or federal common law applies.

As a preliminary matter, the parties appear to assume that federal common law choice-of-law rules apply, rather than the choice-of-law rules of New York: While Eli Lilly argues in the alternative that following New York choice-of-law rules would yield the same result (P. Cross-Mot. Mem. 3 n.2), FedEx does not even raise the issue.[3] The Court agrees with the parties that

---

law, not state law, see below Part IV.

[3] Indeed, FedEx claims that the application of federal common law to the claim here ought to be automatic, citing two cases in which courts applied federal common law without recourse to any choice-of-law analysis. Nippon Fire, 235 F.3d 53; Read-Rite Corp. v. Burlington Air Express, Ltd., 186 F.3d 1190 (9th Cir. 1999). (D. Cross-Mot. Reply Mem. 6.) But the international choice-of-law issue did not present itself in Nippon Fire, where goods were to be transported only from California to New Jersey and Florida and the loss occurred domestically. 235 F.3d at 55. And in Read-Rite, although the district court applied English law to the construction of an airbill where goods had been damaged in England en route to California, the parties had agreed that federal common law should apply, and, thus, on appeal, the Ninth Circuit did not address any international choice-of-law issue. See Read-Rite, 186 F.3d at 1195. Its extensive discussion of the availability of a federal common law cause of action for lost or damaged goods was aimed at clarifying the continued viability of federal common law in this context following the Supreme Court's decision in O'Melveny & Myers v. FDIC, 512 U.S. 79, 87 (1994), curtailing the uses of federal common law. 186 F.3d at 1195. Accordingly, these cases do not the support the proposition that where federal law prevails over state law, it also

federal common law supplies the choice-of-law analysis here, but the issue is not so straightforward as to escape comment altogether.

Eli Lilly styled its Complaint as invoking diversity jurisdiction, and it is axiomatic that federal courts sitting in diversity must apply the choice-of-law rules of the forum state. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). The Second Circuit, however, has held that "federal common law continues to control the issue of liability of air carriers for lost or damaged shipments even after [the Airline Deregulation Act of 1978 ("ADA")]." Nippon Fire, 235 F.3d at 59. Although the Second Circuit in Nippon Fire did not elaborate on its holding, in reaching the same result in Read-Rite, the Ninth Circuit explained that "the scope and standard of limited liability of an air carrier for loss or damage to cargo are directly related to the carrier's rates and services, and go to the very heart of the ADA," which preempts state law claims related to the price, route, or service of an air carrier. Read-Rite, 186 F.3d at 1198; 49 U.S.C. § 41713(b)(4)(A). "Allowing states to decide individually when and how a common air carrier may limit its liability would significantly impact federal deregulation," Read-Rite, 186 F.3d at 1198 (internal quotation marks omitted). Thus, the Complaint in this case actually states a claim exclusively under federal common law, and thus triggers the Court's federal question jurisdiction under 28 U.S.C. § 1331.

---

prevails automatically over foreign law. Cf. Ingram Micro, Inc. v. Airoute Cargo Exp., Inc., 154 F. Supp. 2d 834, 839 (S.D.N.Y. 2001) (finding federal common law preempts state law in dispute over contract for international carriage by road, but going on to conduct choice-of-law analysis to determine whether Canadian or federal common law ought to apply); Beane v. Royal Caribbean Cruise Lines, Inc., Civ. A. No. 91-565, 1992 WL 125338, at *2–*3 (E.D. La. 1992) (briefly examining choice-of-law issue where tort occurred in both navigable and Bahamanian waters, and, accordingly, either general maritime law or Bahamian law could apply).

The application of federal common law choice-of-law rules, however, does not automatically proceed from the invocation of the Court's federal question jurisdiction. Mindful of the Supreme Court's curtailment of the power of federal courts to create common law in O'Melveny, the Second Circuit has been increasingly circumspect in applying federal common law choice-of-law rules in non-diversity cases, at least where federal question claims "hinge upon state law." In re Gaston & Snow, 243 F.3d 599, 605–06 (2d Cir. 2001) (affirming application of state choice-of-law rules to bankruptcy case, stating that "federal choice of law rules are a species of federal common law" and their application accordingly restricted); see also Brink's Ltd. v. South African Airways, 93 F.3d 1022, 1030 (2d Cir. 1996) (applying state choice-of-law rules to Warsaw Convention claim, where treaty referred back to state substantive law); Pescatore v. Pan-Am. World Airways, Inc., 97 F.3d 1, 12–13 (2d Cir. 1996) (same, although noting that the result would have been identical under federal choice-of-law). But for federal common law claims brought in federal court (and which, absent an international dimension, would never present a choice-of-law dilemma) there is simply no rationale for injecting state choice-of-law rules into what is otherwise an exclusively federal case. Federal common law thus provides the appropriate rule of decision for determining whether it or Brazilian law should apply here. But see Ingram Micro, Inc., 154 F. Supp. 2d at 840 (characterizing itself, without explanation, as sitting in diversity jurisdiction over a federal common law claim and applying state choice-of-law rules to decide whether to apply federal or Canadian law.)

Federal common law, in turn, looks to the Restatement (Second) of Conflict of Laws (1971) ("Restatement (Second)") for guidance in conducting choice-of-law inquiries. See Pescatore, 97 F.3d at 12; Bickel v. Korean Air Lines Co., Ltd., 83 F.3d 127, 130 (6th Cir. 1996),

amended in unrelated part on rehearing, 96 F.3d 151 (6th Cir. 1996); Harris v. Polskie Linie Lotnicze, 820 F.2d 1000, 1003 (9th Cir. 1987). The analysis is generally equivalent whether the conflict of laws is interstate or international in nature. Restatement (Second) § 10. Section 188(1) of the Restatement (Second) provides that "[t]he rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6." Section 6, in turn, outlines the following general principles:

> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and the relative
>     interests of those states in the determination of the particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field of law,
> (f) certainty, predictability and uniformity of result, and
> (g) ease in the determination and application of the law to be
>     applied.

In determining the weight of any given state's interest in a particular issue, the following contacts are to be considered: the place of contracting, the place of negotiation of the contract, the place of performance, the location of the subject matter of the contract, and the domicil, residence, nationality, place of incorporation and place of business of the parties. See Restatement (Second) § 188(2) & cmt. e, at 579 ("The states which are most likely to be interested are those which have one or more of the [section 188(2)] contacts with the transaction or the parties."). Additionally, section 197, "Contracts of Transportation," provides that

> [t]he validity of a contract for the transportation of passengers or
> goods and the rights created thereby are determined, in the absence
> of an effective choice of law by the parties, by the local law of the
> state from which the passenger departs or the goods are dispatched,
> unless, with respect to the particular issue, some other state has a

-9-

> more significant relationship under the principles stated in § 6 to the contract and to the parties, in which event the local law of the other state will be applied.

Section 197 adds little to the discussion, however, because while Brazilian law is the default as the law of the state of departure, this choice is subject to the broader analysis of section 6.

Turning then to the section 6 principles, it is clear that the policies of the United States (§ 6(b)) and the policies of Brazil (§ 6(c)) would both be furthered by application of their respective rules. The interest of the United States in permitting federally-certified air carriers to limit their liability is a strong one, as evidenced by the preemption of state claims against these carriers for lost or damaged goods. Applying federal common law would enforce the liability limitation provision against Eli Lilly, consistent with that policy. But it is equally evident that Brazil has an interest in regulating the liability of – and corollary standards of care to be exercised by – carriers transporting goods within its borders, and applying federal common law here would cut directly against that interest. Moreover, as multiplied by the contacts enumerated in section 188(2), Brazil has a much stronger interest in its policy with regard to this particular transaction. While the contract was to be performed internationally, including a stopover in Memphis, Tennessee (as indicated on the face of the airbill, see Casey Aff. Ex. 2, at 1), it was executed in Brazil, and the critical portion of the performance giving rise to this dispute – the land transportation between Guarulhos to Viracopos – took place entirely within Brazil. The United States has no special contact with the events giving rise to this case, beyond its general policy interest in limiting the liability of FedEx as a federally-certified air carrier.

Nonetheless, it is of overall greater importance under the principles of section 6 that application of Brazilian law would invalidate the liability limitations to which the parties

voluntarily bound themselves. With regard to contracts, the Restatement (Second) places a dual emphasis on the expectations of the parties: Section 6(d) stresses "the protection of justified expectations," while section 6(e) looks to the "basic policies underlying the particular field of law," which, in the case of contract law, are one and the same thing. See generally Restatement Second § 188(1) cmt. b, at 577 ("[The parties'] expectations should not be disappointed by application of the local law rule of a state which would strike down the contract or a provision thereof unless the value of protecting the expectations of the parties is substantially outweighed in the particular case by the interest of the state with the invalidating rule in having this rule applied.") Applying federal common law here would enforce the contract as written, and this, in turn vindicates other section 6 principles such as promoting the "certainty, predictability and uniformity of result" (§ 6(f)), and "ease in the determination and application of the law to be applied," (§ 6(g)). Brazil's interests in defining the liability of carriers operating within its borders, even taking into account its considerable contacts with the transaction, are not so strong here as to occasion unsettling the private agreement of these particular parties, who, to the extent they were aware of Brazilian law, opted to contract around it.

The cases cited by Eli Lilly do not support a different result. The court in Chuidian v. Philippine National Bank, 976 F.2d 561, 565 (9th Cir. 1992), tallied up the interests of each jurisdiction using the contacts enumerated in section 188(2), but made no attempt to evaluate these contacts in light of section 6 principles. And the courts in Brinks, 93 F.2d at 1030–32, Ingram Micro, Inc., 154 F. Supp. 2d at 840–42, and Ackerley Media Group, Inc. v. Sharp Electronics Corp., 170 F. Supp. 2d 445, 448–51 (S.D.N.Y. 2001), employed New York choice-of-law rules, which this Court (in contrast to the Ingram Micro, Inc. court) finds inapplicable to

the federal common law claim at issue here. Although New York choice-of-law rules are similar in that they look to the jurisdiction with the most significant interest in the transaction ("grouping of contacts" analysis), often using Restatement (Second) §188(2) to identify relevant contacts, they do not (nor did these courts) grapple with the specific principles of Restatement (Second) § 6 in their assessment, and so are not ultimately instructive here. Even if New York and federal common law choice-of-law rules were one and the same, the New York Court of Appeals has indicated a move away from a traditional emphasis on the place of contracting and performance, consistent with the reasoning employed above, because "the location of the controlling event was sometimes fortuitous, did not reflect the parties' intentions, or was insignificant as against the location of other events. Moreover, the traditional approaches failed to accord any significance to the policies underlying the conflicting laws." In re Allstate Ins. Co., 81 N.Y.2d 219, 225 (1993).

The Court is hard pressed to point to precisely analogous case law and the parties have supplied little; although FedEx cites to numerous cases in which courts have applied federal common law to claims against air carriers for lost or damaged goods transported internationally (D. Cross-Mot. Mem. 3–4), no party to any of the cited cases appears to have raised the issue of whether the law of a foreign jurisdiction might apply instead. But application of the Restatement (Second) principles to this case demonstrates that the United States, because its law vindicates the parties' expectations, is the jurisdiction with the most significant relationship to the transaction and the parties. Accordingly, federal common law is applicable and has the conceded effect of limiting FedEx's liability pursuant to the terms of the contract.

## CONCLUSION

Plaintiff's motion for partial summary judgment dismissing defendant's second affirmative defense is granted, but plaintiff's cross-motion for partial summary judgment holding Brazilian law applicable is denied. Defendant's cross-motion for partial summary judgment limiting its liability in accordance with federal common law is granted.

SO ORDERED.

Dated: New York, New York
September 13, 2005

_____
GERARD E. LYNCH
United States District Judge